FILED

02/24/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 1, 2022

**LINDA ANNE DUNAVANT v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Tipton County**
**No. 8717     Joe H. Walker, III, Judge**

_____

**No. W2021-00454-CCA-R3-PC**
_____

Petitioner, Linda Anne Dunavant, appeals the denial of her post-conviction petition alleging that the post-conviction court erred in finding that she received the effective assistance of counsel at trial. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Linda Anne Dunavant.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Erik Haas and James Walter Freeland, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

Petitioner was convicted of aggravated assault, two counts of first-degree felony murder, aggravated child neglect, and aggravated arson for pouring lighter fluid on and igniting a loveseat where her boyfriend, Thomas Jones, had been sitting. This resulted in Petitioner's house burning down with her two young grandchildren sleeping inside, resulting in their deaths. A full recitation of the facts can be found in this Court's opinion

on direct appeal affirming Petitioner's convictions. *State v. Linda Anne Dunavant*, No. W2018-00031-CCA-R3-CD, 2019 WL 1418184, at *1–8 (Tenn. Crim. App, at Jackson, Mar. 28, 2019) *no perm. app. filed.* Petitioner filed a timely pro se petition for post-conviction relief alleging several claims of ineffective assistance of counsel including that (1) "counsel should have not allowed [her] to testify;" (2) "counsel failed to properly cross-examine several witnesses;" and (3) "counsel failed to object to quantify [a witness's] observations." Counsel was appointed, and filed a notice that no amended post-conviction petition would be filed.

The sole issue raised by Petitioner on appeal is that not enough was done by trial counsel to bring out evidence that Petitioner was traumatized by her toxic and abusive relationship with one of two men who lived in her house and that her motive in starting the fire was to get one of the men out of the house. She further asserts that "[i]t was crucial that [she] be presented in as sympathetic light as possible, yet her lawyers failed to do this." We note that trial counsel consists of two attorneys who will be referred to as "trial counsel" and "co-counsel" when necessary. Also, we will confine our recitation of the evidence offered at the post-conviction hearing to the context in which testimony concerning Petitioner's circumstances and relationship with the two men who lived in her home was presented.

At the post-conviction hearing, Petitioner was asked about her discussions with trial counsel about trial strategy. Petitioner testified that she told trial counsel that she set the fire in her house because Thomas Jones and Williams Fayne were high and intoxicated, and she wanted to "spook" them to get them out of her house. She testified that the two men were also "making sexual allegations towards my grandchildren and myself, and that's what got me - - I could not allow that to happen." Petitioner further testified that she had been raped by both men and that she had a broken back. She agreed that was her defense at trial.

Petitioner asserted that trial counsel made the decision for her to testify at trial. She said that she testified to "some extent," but not the way that she "could have." When asked what she meant by "not the way [she] could have." Petitioner testified:

> I would have like to been able to ask for the mandated reporters, like the mental health counselors that were coming and visiting my home monthly, who were aware of situations that were going on with Thomas Jones and my daughter and the things going on with my grandchildren about my daughter that I was trying to get help and feeding and taking care of them and getting him out of the house and him being put on the list of Covington Housing Authority and being made to stay away from my home, coming though my windows, making a way to come into my home. There's so many things I feel that could have been done to alleviate things that came up to the

night in question that all this happened that I had to take the actions that I took to keep my granddaughters from getting molested and me getting hurt again as well.

Petitioner said that she wanted reports from people who came to her home who were

aware of the situation of the abuse, the police reports, the 911 calls, the lady from professional care mental health services that I attended, taking me to churches to get food for my children to feed them because mama was gone all the time. And they were aware. I was reaching out in so many ways for help leading up to the night in question. So many ways.

Petitioner testified that she was trying to show that Mr. Jones had been a predator for five years, and she discussed the matter with trial counsel. She wanted to introduce the pictures that police took from the many times that she had been beaten and medical records from the Campbell Clinic after Mr. Jones had broken several of her ribs and her back in two places. Petitioner ultimately testified that trial counsel did not force her to testify but she felt "confused and scared of thinking if I do, this is going to happen, but if I don't - - you see what I mean?"

Petitioner indicated that character witnesses, such as her mother, should have been called to testify at trial as to what she was going through and to talk about Mr. Jones. She said that her mother knew the situation "quite well." On cross-examination, Petitioner agreed that trial counsel was able to cross-examine the State's witnesses at trial, that she was able to testify, and that an expert witness testified on her behalf. However, Petitioner felt that "more could have been done."

Trial counsel testified that Petitioner's defense was that she set the fire to get Mr. Jones out of her house but did not intend to burn the house down. Trial counsel said that a fire investigator testified as an expert witness on Petitioner's behalf to review the timeline of what he believed occurred. It was alleged that everyone thought the initial fire had been put out but was possibly rekindled when Petitioner walked outside, and she could not get back inside in time to save the children. Trial counsel noted that Petitioner was "horribly burned." Trial counsel testified: "So the argument was that [Petitioner] may have engaged in reckless burning of personal property, this could even be a reckless homicide, but she never, ever intended to commit arson."

Trial counsel testified that it was Petitioner's decision to testify at trial. She noted that Petitioner had given multiple conflicting statements concerning the fire. Trial counsel agreed that Petitioner's defense was to show that Petitioner was traumatized, confused and could not remember all of the different statements that she had made. Trial counsel testified:

So the reason the fire started to begin with was because [Petitioner] was trying to get [Mr. Jones] out of the house. They had a history of violence, and she didn't have any sort of weapons. So pouring a little lighter fluid on the couch and lighting it got him moving pretty quick off that couch. So that was what was suggested to the jury, and that she was not trying to set a fire, she was just trying to get him out of the house due to his drug use, drinking, it's getting late, he's getting more belligerent.

Trial counsel agreed that she was able to cross-examine Mr. Jones at trial, and he admitted that he had upset Petitioner and that she set the fire to get him out. However, Mr. Jones downplayed the allegation that he and Petitioner were fighting and suggested that Petitioner was jealous because another woman had been at the house earlier. Trial counsel testified that they argued to the jury that the fire was set due to the history of violence between Petitioner and Mr. Jones.

Co-counsel testified that he thought that he and trial counsel had a good working relationship. When asked if Petitioner asked him to look directly into calling a particular witness or if they needed "to get into Thomas Jones more or Ms. Carruthers," co-counsel replied: "I don't remember if she did. But once again, I was not meeting with [Petitioner] as much as [trial counsel] was meeting with her."

**Analysis**

As noted above, Petitioner argues that trial counsel was ineffective by failing to bring out evidence that Petitioner was traumatized by her toxic and abusive relationship with two men who lived in her house and that her motive in starting the fire was to get one of the men out of the house. She further asserts that "[i]t was crucial that [she] be presented in as sympathetic light as possible, yet her lawyers failed to do this." The State counters that this issue is waived because Petitioner failed to present it in her post-conviction petition or litigate it at the post-conviction hearing. We agree with the State.

Initially, we will address the State's argument that Petitioner's appeal should be dismissed because Petitioner failed to file a timely notice of appeal. The record shows that although the post-conviction court's order denying Petitioner's post-conviction petition was entered on March 29, 2021, Petitioner did not file her notice of appeal until April 30, 2021. According to Tennessee Rule of Appellate Procedure 4(a) "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from. . . ." The rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the timely filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). In deciding whether to grant a waiver regarding an untimely notice of appeal, this court "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other

- 4 -

relevant factors presented in each case." *Michelle Pierre Hill v. State*, No. 01C01-9506-CC-00175, 1996 WL 63950, at \*1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing *Michelle Pierre Hill,* 1996 WL 63950, at \*1).

Petitioner filed her notice of appeal thirty-two days after the post-conviction court entered its judgment. As correctly pointed out by the State, Petitioner does not allege that her notice of appeal was mailed by certified mail or registered return receipt mail within the time fixed for filing. *See*. Tenn. R. App. P. 20(a). Additionally, Petitioner has failed to provide an explanation for his untimely filing. However, because the notice of appeal was untimely by only two days, "we conclude that the 'interest of justice' is best served by granting a waiver in this case." *State v. Vincent Rodolphus Hester*, No. M2020-00557-CCA-R3-CD, at \*2 (Tenn. Crim. App., at Nashville, July 22, 2021), *no perm. app. filed*; *see* Tenn. R. App. P. 4(a); *see also Crittenden v. State*, 978 S.W.2d 929, 932 (Tenn. 1998)

A petitioner is entitled to post-conviction relief when a conviction or sentence is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). Evidence is clear and convincing when the correctness of the conclusions drawn from the evidence admits no serious or substantial doubt. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009).

This court reviews the post-conviction court's conclusions of law, its decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness. *Whitehead v. State*, 402 S.W.3d 615, 620 (Tenn. 2013) (citing *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)). However, the post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). This court may not substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001).

"A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented. . . ." T.C.A. § 40-30-106(g). Petitioner in this case has waived her claim that trial counsel was deficient for failing to bring out evidence regarding Petitioner's motives for starting the fire in her house resulting

in trial counsel's failure to present her in as sympathetic light as possible to the jury. She failed to submit this specific claim to the post-conviction court in her post-conviction petition, failed to present evidence on this issue at the post-conviction evidentiary hearing, and accordingly, the post-conviction judge did not rule on this issue. *See Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."). Therefore, Petitioner is not entitled to relief on this issue.

## CONCLUSION

Because Petitioner's single issue for review has been waived, we affirm the judgment of the post-conviction court.

_____
JILL BARTEE AYERS, JUDGE